# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | MAG NO. 07-537-M-01 (AK) |
| | : | |
| v. | : | |
| | : | |
| HARRIETTE WALTERS | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that the defendant be detained pending trial.

### Introduction

Harriette Walters, a defendant with significant contacts and transactions outside the continental United States, has been charged in a ten-count complaint based on her massive, years-long scheme to embezzle funds from the District of Columbia.

Like her primary co-conspirator, Jayrece Turnbull, who is held pending trial in Maryland, Ms. Walters should be held because she is a serious flight risk. She is the mastermind of a $20 million theft from the District of Columbia government who avoided detection for years by means of a sophisticated, wide-ranging scheme. She has the motive, skills, and wherewithal to flee and thrive on the lam; and, given that less than one-third of the $20 million she stole has been located by the government thus far, she may possess a large cache of stolen funds and liquid assets that would enable her successfully to avoid apprehension. She faces an extraordinarily lengthy period of incarceration that is all the more likely given the extraordinarily powerful evidence against her. Although she would commit an additional crime by fleeing, it would almost be irresistible for her not to try under the circumstances here.

Ms. Walters should also be held pending trial because she presents a serious risk of obstructing or attempting to obstruct justice. Given the amount of stolen District funds that has yet to be located, Ms. Walters has a strong incentive to put any still-hidden funds beyond the reach of authorities personally or by and through agents. As for potential agents who might assist her in obstructing justice, she has shown an ability to corrupt a bank manager, who was essential to her scheme to deposit stolen funds into accounts that often bore no relationship to the payees on the government checks and to move money among and between sham corporate accounts.

### Applicable Law

The government must prove that a defendant presents a risk of flight only by a preponderance of the evidence, not by clear or convincing evidence or other, more demanding standards. United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir. 1986); United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996).[1] Moreover, at a detention hearing the government may present evidence by way of a proffer. United States v. Smith, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

Three of the four factors under Section 3142(g) that are to guide the Court's detention decision—(1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; and (3) her history and characteristics—strongly support the need for and wisdom of detaining Ms. Walters pending trial. See 18 U.S.C. § 3142(g). In short, given that there is no condition or combination of conditions that would assure her appearance, Ms. Walters should be detained. See id. § 3142(e).

---

[1]     The government must demonstrate clear and convincing evidence to detain a defendant as a serious risk of obstructing or attempting to obstruct justice. See, e.g., United States v. Leon, 766 F.2d 77, 82 (2d Cir. 1985).

**Factual Background**

As recounted in great detail in the affidavit in support of the arrest warrant, which is incorporated herein by reference, Ms. Walters has organized and led a lengthy, complicated, and sophisticated scheme to embezzle large sums of money from her employer, the District of Columbia government. She created false documents, misrepresented the meaning of legitimate documents, corrupted a bank manager, and did all the other things necessary to lead a terribly successful conspiracy. The total loss to the government caused by Ms. Walters stands at over $20 million and has the significant potential to grow as the government identifies additional fraudulent checks.

The government has been able to identify for recovery only $4.2 million in bank accounts, approximately $1.5 million in real estate, and approximately $800,000 in cars, furniture, and other personal property. That amounts to a total of approximately $6.5 million out of $20 million, or less than one-third of the total loss identified thus far. In other words, there is a significant potential amount of funds available to the co-conspirators.

Ms. Walters's primary co-conspirator, Jayrece Turnbull, has been detained pending trial on the ground that she presents a risk of flight.[2]

---

[2]    The Court analyzes the risk of flight for defendants individually, taking into consideration each defendant's particular history and characteristics. The government is seeking to have Ms. Walters detained, rather than placed under stringent release conditions, as is the case for one of her co-conspirators, Diane Gustus, because Ms. Walters presents an extraordinary risk of flight. Ms. Walters was the ringleader whose approval of fraudulent voucher requests was the sine qua non of the scheme's success; Ms. Gustus, while still responsible for the fraudulent voucher requests she created, did not create all the fraudulent vouchers approved by Ms. Walters and had no authority to approve any such vouchers. Further, as its leader, Ms. Walters has had direct access to the proceeds of her scheme, in bank accounts and otherwise; that presents a greater risk that she could use hidden assets to facilitate her flight.

According to Pretrial Services, Ms. Walters was born in the Virgin Islands and has a valid passport. The government has obtained information that Ms. Walters owns a large home in St. Thomas overlooking the ocean. She has no children or known dependents. She has fifteen years of schooling. Finally, Ms. Walters is no longer an employee of the District of Columbia, as her employment was terminated on November 7, 2007.

**Argument**

**I.    Ms. Walters Presents a Serious Risk of Flight and Obstruction of Justice.**

     **A.**   <u>Nature and Circumstances of the Offenses Charged</u>

The nature and circumstances of the offenses charged provide powerful and convincing reasons to detain Ms. Walters until trial. First, she is charged as being the leader of a sophisticated embezzlement, money laundering, and bank fraud scheme that required her to falsify documents, manipulate legitimate documents, outwit and outmaneuver government financial controls, corrupt a bank manager, and maintain the cooperation of her co-conspirators despite their risk of apprehension. She was able to continue this complicated scheme for <u>years</u> without being caught. A defendant with those types of sophisticated financial and interpersonal skills presents a great risk of not only flight, but <u>successful</u> flight.

Moreover, the charges against Ms. Walters expose her to an extraordinarily lengthy period of potential incarceration. The statutory maximum penalty for even one of the offenses with which she is charged—bank fraud—is thirty years. Moreover, a rough calculation of her exposure under the U.S. Sentencing Guidelines suggests the potential for a level 39, which calls for a range of 262-327 months of incarceration, provided the sentencing judge does not choose to depart upward under the Guidelines or under <u>Booker</u>. If she were released before trial, she would

-4-

have strong reason to flee to avoid that potential period of incarceration.[3] Moreover, given the overwhelming evidence in the case—that Ms. Walters personally approved each and every fraudulent voucher, and that she has confessed—her motive to flee and avoid a likely sentence of such length becomes even more likely. Finally, the government has initiated efforts to seize her homes, vehicles, and other assets, leaving Ms. Walters little of apparent financial value left in the United States and all the more reason to flee overseas.

For many of the same reasons, Ms. Walters presents a serious risk of obstruction of justice or attempting to obstruct justice.[4] Given the vast disparity between the known loss and the known funds and assets held by the conspirators, there may be hidden resources available to Ms. Walters. If she were released, Ms. Walters would have a strong and powerful incentive to use any such assets to flee, to put the assets further beyond the reach of authorities, or both.

In her opposition to detention, Ms. Walters asserts that white collar defendants are not proper subjects of pretrial detention, and she points to other prominent defendants who were granted pretrial release. What her motion does not discuss, however, is whether any of those defendants had large amounts of missing and unaccounted-for funds that were the proceeds of the charged crimes—funds that could be used to support efforts to avoid apprehension. Moreover, in those cases—as highlighted by the decisions of the trial courts to continue the defendants on release pending sentencing—there were more significant questions of criminal liability. Here,

---

[3]     The punishment for failing to appear—10 years—is one-third the punishment for bank fraud. Compare 18 U.S.C. § 3146(b)(1)(A)(i) with § 1344. Granted, § 3146 sentences are imposed consecutively to punishment for any other offense. See 18 U.S.C. § 3146(b)(2).

[4]     The nature of the charges further suggests a serious risk of flight because Ms. Walters has brought her family members and co-workers under scrutiny and, in some cases, under arrest.

even at this early stage, there is overwhelming evidence against Ms. Walters—evidence of a character and strength that just was not present in those matters.

The defendant also finds no support for her opposition to detention in the Washington Teacher's Union case.[5] In that case, the total loss to the union was approximately $5 million, not over $20 million, and the government was able to trace the overwhelming majority of the stolen funds. In other words, in that case, unlike Ms. Walters's, there was no potentially large cache of stolen funds that could be accessed to live successfully and comfortably on the lam. Second, in the Teacher's Union case, unlike here, there was no evidence suggesting that the primary defendants—Barbara Bullock and Gwen Hemphill—had traveled overseas or purchased assets outside the jurisdiction during the scheme; here, the government has obtained evidence since presentment that Ms. Walters and her co-conspirators have traveled and engaged in financial transactions outside the continental United States; and the search for overseas accounts and assets continues. Finally, in the Teacher's Union case, the union had conducted its own investigation, the primary defendants were informed that the union was referring the case to the federal government for potential prosecution, and yet the defendants still did not flee at the time. Nearly a year elapsed between the search warrants and the indictment in the Teacher's Union case and the defendants still did not flee. The fraud in the Teacher's Union case was historical and complete by the time the investigation began; here, the government interrupted an ongoing scheme to defraud the District of Columbia. Thus, the Teacher's Union case has little bearing on the analysis here, except to suggest that detention here is appropriate given the overwhelming material differences between this case and that one.

---

[5]    United States v. Baxter et al., 03-516 (D.D.C.).

B.    Weight of the Evidence against Ms. Walters

Ms. Walters personally approved each and every fraudulent property tax refund request. Ms. Walters confessed.[6]  The evidence against her is overwhelming.

C.    Ms. Walters's History and Characteristics

Ms. Walters is a first-time offender with ties to the Washington, D.C. metropolitan area. Nevertheless, other characteristics weigh in favor of pre-trial detention. She has no children, no dependents, and no job to keep her here.  She has strong ties to the Virgin Islands and has a home in St. Thomas.[7]  She obtained her passport in 2005, at the height of the conspiracy.[8]   Moreover, during the search of her home, investigators found a passbook from a bank in Puerto Rico, which suggests that she may have deposited funds in foreign financial institutions for a "Plan B" in the event she were to be apprehended.  She has used her vast supply of illicit resources over the past several years to enlist the support of a broad range of family members, friends, and now-former co-workers, who could be expected to feel an obligation or even an incentive to assist her in any effort to flee.  Finally, judging by her ability to perpetrate this multimillion-dollar embezzlement scheme for so many years, Ms. Walters is a highly sophisticated offender who could be expected to outwit release conditions designed to secure her appearance.

---

[6]    Despite her initial confession, Ms. Walters has not yet undertaken to assist the government in identifying the funds she stole.

[7]    The Virgin Islands is an organized incorporated territory of the Untied States, but Ms. Walters's overseas ties suggest an ability to exist and thrive beyond U.S. territory.  The Virgin Islands has extraordinarily limited controls on the entry and egress of its citizens and visitors; and foreign jurisdictions are a short distance from the Virgin Islands.

[8]    One of her primary co-conspirators, Jayrece Turnbull, has extensive ties to the Dominican Republic, having purchased at least one home and transferred funds there.

D.    Danger to the Community

At the present, and given that she is no longer a District of Columbia employee, the government has no information suggesting that Ms. Walters poses a definitive danger to the community or any particular member of the community.

II.    There is No Reasonable Condition or Combination of Conditions that Would Ensure Ms. Walters's Appearance.

The variety of potential conditions of release discussed in 18 U.S.C. § 3142(c)(1)(B) provide no assurance that Ms. Walters would appear at future Court dates. For example, Ms. Walters has a long and extensive history of "gifting" family, friends, co-workers, and friends of friends; under the circumstances, the government is not confident that there exists a third party who could be trusted to assume supervision for her. See id. § 3142(c)(1)(B)(i). A requirement that she maintain employment is likely moot, inasmuch as she no longer works for the District of Columbia and it is unlikely another employer would assume the risk of hiring her. See id. § 3142(c)(1)(B)(ii). According to Pretrial Services, she has fifteen years of education, so there is no need for her to maintain or commence an educational program, and no reason to believe that such a program would secure her future appearance. See id. § 3142(c)(1)(B)(iii). Moreover, there is no reason to believe that release conditions prohibiting her from travel or contacting witnesses, or requiring her to report to Pretrial Services and comply with a curfew, would assure her appearance; all of those requirements require too great a leap of faith that Ms. Walters will ignore her present plight and remain in the jurisdiction. See id. § 3142(c)(1)(B)(iv-vii). Finally, given that her legitimate salary was approximately $80,000 annually, there is no reason to believe she has sufficient <u>untainted</u> real property or funds sufficient to post as a bond: the government

-8-

has moved to seize her known assets, and there is every reason to believe that any remaining assets or funds would be proceeds of her scheme. See id. § 3142(c)(1)(B)(xi-xii).

### Conclusion

The Court should grant the government's motion to have Ms. Walters detained pending trial because she poses a serious risk of flight and a serious risk of obstructing or attempting to obstruct justice.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

By: _____

Timothy G. Lynch, D.C. Bar. No. 456506
Geoffrey L.J. Carter, D.C. Bar No. 460971
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, NW
Washington, D.C.  20530
(202) 353-4862
timothy.lynch2@usdoj.gov

## **Certificate of Service**

I, Timothy G. Lynch, certify that, on this 13th day of November 2007, the government filed a copy of the foregoing Memorandum in Support of Detention on ECF and served a copy on counsel for Ms. Walters, Peter R. Zeidenberg, Esquire, by email.

Timothy G. Lynch
Assistant United States Attorney