IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America<br><br>v.<br><br>Harriette Walters,<br><br>               Defendant. | MAG. No. 07-537-M-01 |

## MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant Harriette Walters, by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Government's Motion for Pretrial Detention.

### PRELIMINARY STATEMENT

The Government's motion for pretrial detention on behalf of Ms. Walters must be denied. The Government simply cannot meet its burden of proof in establishing that Ms. Walters presents a flight risk meriting pretrial detention. Under the Bail Reform Act, a person charged with an offense *shall* be released on her personal recognizance or an unsecured appearance bond *unless* the court determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community. 18 U.S.C. § 3142. In order to secure pretrial detention based on a defendant's risk of flight, the Government must demonstrate by a preponderance of the evidence that no combination of conditions will reasonably assure the presence of the individual at future court proceedings. U.S. v. Vortis, 785 F.2d 327 (D.C. Cir. 1986). To the extent that the Government is seeking pretrial detention on the theory that Ms. Walters is a danger to the community or a risk to commit obstruction of justice, the quantum of evidence required to secure pretrial detention is even

higher: the Government must establish, *by clear and convincing evidence*, that no conditions of release will assure the safety of the community. Id.

As to both issues, the Government falls far short of meeting its burden. Ms. Walters is a fifty-one year old woman with no prior criminal history. She is a United States citizen. She possesses no foreign passports. She has lived and worked in the District of Columbia for twenty-nine years. The investigation at issue involves financial crimes that, while serious, do not involve allegations of violence. There is no evidence that Ms. Walters has taken any steps whatsoever to prepare to flee this jurisdiction. All of her assets have been frozen by the Government. Ms. Walters was cooperative with the Government at the time of her arrest and, according to the Government, made a full accounting of her involvement in this offense. Pretrial services has endorsed Ms. Walters as a good candidate for conditional release under the heightened supervision monitoring program. A similarly situated co-defendant of Ms. Walters' -- Diane Gustus -- who, under the federal sentencing guidelines is facing the potential of an equally severe sentence if convicted, was released by this Court (with the assent of the Government) last week with stringent conditions on her freedom. Ms. Walters is more than willing to accept similarly restrictive conditions, including electronic home monitoring. There is simply no legally cognizable difference between Ms. Walter's risk of flight and that of Ms. Gustus. Because the Government has failed to meet its evidentiary burden, Ms. Walters respectfully requests that this Court deny the Government's Motion for Pretrial Detention.

## ARGUMENT

### A. The Government has Failed to Establish by a Preponderance of the Evidence that Ms. Walters Presents a Flight Risk.

The Government contends that Ms. Walters should be detained because she presents a flight risk. The Government cannot, however, establish *by a preponderance of evidence*, proof

to satisfy that standard. See U.S. v. Xulam, 84 F.3d 441 (D.C. Cir. 1996). The evidence required "must, of course, go to the ultimate issue: that no combination of conditions . . . can 'reasonably' assure that the defendant will appear for trial." Xulam, 84 F.3d at 422, 18 U.S.C. §3142(c).

By statute, the Court is required to consider specific, enumerated factors in making its determination regarding pretrial release. These factors are: 1) the nature and circumstances of the offense charged, particularly its nonviolent nature; 2) the weight of the evidence against the person; 3) the history and characteristics of the person, including her character, family ties, employment, length of residence in the community, community ties, past conduct, criminal history, and record of court appearances; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See Xulam, 84 F.3d at 442, 18 U.S.C §3142(g).

The factors set forth in 18 U.S.C §3142(g) weigh almost entirely in favor of Ms. Walters. As stated above, the allegations do not involve any suggestion of violence. Ms. Walters has no criminal history. She is a twenty-nine year resident of this city. She has no known ability to evade surveillance. While the defense is not at this time challenging the strength of the Government's case, we do note that the strength of the evidence is considered "the least important [factor], and the statute neither requires nor permits a pretrial determination of guilt." U.S. v. Gebro, 948 F.2d 1118 (9th Cir. 1991). Moreover, the law requires "more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." U.S. v. Friedman, 837 F.2d 48, 50 (2d Cir. 1988) (vacating order for pretrial detention in a case involving sending and receiving child pornography on grounds that the chance of flight was reduced by absence of criminal record, lack of known ability to flee, and

family and community ties); see also U.S. v. Himler, 797 F.2d 156 (3d Cir. 1986) (reversing pretrial detention order despite defendant's clear ability to obtain false identification because evidence of family ties and past record of court appearances diminished flight risk).

The pretrial detention of a white collar defendant is so rare as to be almost unheard of.[1] The one instance of which we are aware that the Government successfully sought the detention of a white-collar defendant actually undermines the Government's argument in the instant case. In U.S. v. Anderson, 384 F.Supp.2d 32 (D. D.C. 2005), the District Court upheld this Court's order of pretrial detention of a defendant indicted on federal tax evasion charges. In Anderson, the Government accused the defendant of employing a sophisticated scheme to avoid paying

---

[1] It is worth noting the list of recent white collar defendants who were released pretrial, notwithstanding allegations that they were responsible for causing their victims to lose *hundreds of millions* and even *billions* of dollars of their personal savings. For example, Bernie Ebbers: pretrial release granted notwithstanding *$11 billion* accounting fraud; Ken Lay and Jeffrey Skilling: granted pretrial release notwithstanding the allegation that their conduct led to the collapse of Enron, wiped out more than *$60 billion* in market value, almost *$2.1 billion* in retirement savings, as well as 5,600 jobs; John Rigas, founder of Adelphia Communications Corp.: granted pretrial release notwithstanding allegations of fraud involving *$100M*; Richard Scrushy, CEO of HealthSouth Corp.: granted pretrial release notwithstanding allegations that he was involved in a *$2.7 billion* fraud scheme. Indeed, it should be noted that all of the above-listed defendants, with the exception of Mr. Scrushy, were all permitted to remain free *even post-conviction, when were pending sentencing*. The only exception to this was Mr. Scrushy, for whom sentencing was not an issue; he was acquitted of all charges at his HealthSouth trial.

We submit that the facts of this case closely resemble the facts of the 2005 Washington Teacher's Union corruption case. U.S. v. Baxter, No. 03-cr-516 (D. D.C. 2005). Defendants there faced charges of embezzlement, money laundering, and theft of funds held from the Washington Teacher's Union. In that case, the defendants were neither preventatively detained pretrial, nor were they detained post-conviction pending sentencing.

taxes on approximately half a billion dollars of income. The Court in <u>Anderson</u> found that the nature and circumstances of the charged offense and the defendant's history and characteristics not only demonstrated great sophistication and shrewd knowledge of international financial transactions, but also a personal ability and malevolent motivation to flee the jurisdiction and evade prosecution. <u>Id.</u> at 36. The distinctions between <u>Anderson</u> and the facts at bar are numerous and stark, and help demonstrate that the Government's argument for pretrial detention is without merit.

With regard to the nature and circumstances of the charged offense, the Court in <u>Anderson</u> found that the charged offenses demonstrated the defendant's sophisticated knowledge of and familiarity with foreign financial laws, as well as his ability to move money from country to country in a highly concealed fashion, "clearly suggest[ing] Mr. Anderson is a flight risk." <u>Id.</u> at 35-36. In no way do Ms. Walter's alleged actions demonstrate a knowledge of and access to international financial channels of the sort that concerned this Court in <u>Anderson</u>. The Government cannot demonstrate how the *nature* and *circumstances* of this alleged offense reveal behavior suggesting that Ms. Walters is a flight risk.

Second, in <u>Anderson</u>, the defendant demonstrated a unique ability to flee the jurisdiction and further demonstrated a "persistent deceitfulness" in his dealings with the Government and the Court. He traveled extensively, spoke a foreign language, owned property abroad, employed numerous aliases, maintained anonymous domestic and foreign mailboxes, and, most significantly, was found to possess books and pamphlets instructing how to create false identities.[2] The Court in <u>Anderson</u> also noted that Anderson maintained a residence in Spain;

---

[2] Seized from Anderson's possession were an astonishing quantity of books and materials regarding how to create a false identity, including: "Reborn Overseas: Identity Building in Europe, Australia and New Zealand"; "Methods of Disguise"; "The Paper Trip I: For a New You Through New ID"; "Poof! How to Disappear and Create a New Identity." <u>Id.</u> at 37-38. This list of books and materials seized from Anderson is not exhaustive.

had many social – including romantic – ties abroad; and had "considered applying for citizenship in another country." Id. at 39. Ms. Walters' situation could not be more different.

The Government offers no evidence demonstrating that Ms. Walters has an intimate familiarity with any foreign country. Ms. Walters owns no property outside the United States. She holds no foreign passports. There is no evidence she has used aliases in the past. She has lived in this city for nearly thirty years. She was reportedly cooperative and forthright with the FBI at the time of her arrest. She has had no prior convictions, much less failures to appear in court. She has no assets available to her. She is willing to surrender her passport to pretrial services. In short: where, exactly, does the Government expect Ms. Walters to flee? And how, exactly, would she get there without any assets at her disposal?

The Government cannot provide any evidence that Ms. Walters is considering fleeing this jurisdiction. Indeed, given that Ms. Walters reportedly cooperated fully and truthfully with the FBI at the time of her arrest, the Government simply has no basis in logic to claim Ms. Walters is secretly planning on fleeing the jurisdiction.

**B.   To the Extent the Government Moves for Pretrial Detention Based on Concerns that Ms. Walters will Obstruct Justice Upon Release, the Government Has Failed to Meet the Clear and Convincing Evidentiary Standard.**

In the event that the Government seeks to argue that Ms. Walters merits pretrial detention based on a "concern" or "fear" that upon conditional release she will obstruct justice by moving or hiding proceeds of her alleged fraud, this argument rests on even shakier ground. The Government is required to present *clear and convincing* evidence that no combination of conditions of release would reasonably assure the safety of the community or prevent the obstruction of justice. The Government's concerns, fears or worries cannot satisfy the clear and convincing evidence standard articulated by the statute. The Government is required to present

clear and convincing *evidence* to establish that its fears and concerns are justified. If the Government intends to seek pretrial detention based on concerns that Ms. Walters will engage in efforts to hide any assets, it is invited to proffer such evidence before the Court. If it is unable to show *evidence* that Ms. Walters will indeed engage in such behavior by a *clear and convincing* standard, this Court must deny the Government's motion for pretrial detention.

### CONCLUSION

For the foregoing reasons, Ms. Walters respectfully requests that the Court deny the Government's Motion for Pretrial Detention and endorse the recommendations of Pretrial Services.

Dated: November 13, 2007            By: _____
                                    Bar No. 440-803
                                    DLA PIPER US LLP
                                    500 8th Street, N.W.
                                    Washington, DC 20004
                                    Telephone:  202.799.4531
                                    Facsimile:  202.799.5531

                                    Attorney for Defendant
                                    Harriette Walters

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Harriette Walters' Memorandum was served electronically via e-mail this 13th day of November, 2007 to the following:

>Timothy Lynch, Esq.
>U.S. Attorney
>Timothy.lynch@usdoj.gov


>Geoffrey Carter, Esq.
>U.S. Attorney
>Geoffrey.Carter2@usdoj.gov

_____
Peter R. Zeidenberg